16814

STATE v. ANDERSON
(79 S. E. (2d) 455)

*John Gregg McMaster, Esq.,* of Columbia, *for Appellant,*

*Messrs. T. P. Taylor, Solicitor,* and *John W. Foard, Jr., Assistant Solicitor,* of Columbia, *for Respondent.*

January 4, 1954.

JAMES M. BRAILSFORD, JR., Acting Associate Justice.

Lewis (Moody) Anderson, the appellant here, on or about September 30, 1951, in Richland County, struck one James Henry several times on the head with a piece of stove wood. Henry suffered a cerebral hemorrhage and died on October 22, 1951. Anderson was indicted for murder and upon his trial was convicted of manslaughter and was sentenced to serve a term of ten years.

Only two questions are involved on this appeal. The first of these relates to the admission in evidence of a written statement signed by appellant on October 23, 1951. The second challenges the sufficiency of the evidence to establish that Henry's death resulted from the injuries inflicted upon him by appellant.

When the State offered in evidence appellant's written statement, which he had signed for police officers of the City of Columbia, his counsel objected to its admission upon the ground that the provisions of Act No. 794 of the Acts of 1952, 47 St. at Large, p. 1977, approved March 1, 1952, had not been complied with, in that the officers who took the statement did not give a copy thereof to appellant or obtain his receipt therefor.

This objection was overruled upon the ground that these requirements of the act did not apply to the statement which was signed by appellant some five months before it became law.

We agree with this ruling of the trial judge. The objection to the statement was based upon noncompliance with section 1 of the act. We are not concerned here with section 2, which imposes certain conditions on the examination or cross examination of a witness concerning a written statement.

Section 1 requires that *"Whenever * * * (any officer) * * * shall* take a written statement in any in-

vestigation", he shall give a copy thereof to the person making the statement and obtain his receipt therefor.

The duty imposed on investigating officers is with respect to statements which they *"shall take"*, necessarily meaning after the passage of the act.

Section 3 provides that unless the provisions of the preceding sections have been complied with no *such statement* shall be admissible in evidence.

This section adds nothing to the duties imposed on investigating officers by the act. It simply declares that the result of noncompliance with its terms shall be the exclusion of *such statement* from evidence. The applicability of the rule of exclusion laid down by this section is limited to a statement to which the requirements of the act apply, for it is only as to "such (a) statement" that noncompliance is possible.

The remaining question arises on appellant's exception to the refusal of his motion for a directed verdict of not guilty upon the ground that "the only reasonable inference from the testimony is that the State has failed to prove that the blows inflicted by the defendant were the probable cause of the death of the deceased."

In passing on this question we are required to view the evidence and the inferences which may be drawn therefrom in the light most favorable to the State. *State v. Nicholson,* 221 S. C. 399, 70 S. E. (2d) 632. It is not the function of the court to pass upon the weight of the evidence, but to determine its sufficiency to support the verdict. *State v. Brown,* 205 S. C. 514, 32 S. E. (2d) 825. If there be any evidence which tends to prove the fact in issue, or which reasonably conduces to its conclusion as a logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury. *State v. Smith,* 220 S. C. 224, 67 S. E. (2d) 82. The question of whether such evidence meets the burden of establishing the guilt of the ac-

cused beyond a reasonable doubt is for the determination of the jury, as the triers of the facts, under appropriate instructions by the court. *State v. Roddy,* 126 S. C. 499, 120 S. E. 359.

A brief review of the evidence relied upon by the State to establish that the injuries inflicted by appellant caused or contributed to the death of Henry is necessary.

All of the witnesses agree that the difficulty between these parties occurred shortly before or after midnight of a Sunday. The indictment alleges the date to have been September 29, 1951. However, the testimony indicates that the actual date of the occurrence was October 7th rather than September 29th.

During the course of it, appellant struck Henry a number of times with a piece of heavy stove wood. It may be fairly inferred that a severe beating was administered. Henry was knocked to the floor by one or more of several blows which landed on his head. He begged appellant not to kill him. After surrendering a considerable sum of money, which appellant claimed had been taken from his person, Henry left the premises and went to his own home. His head and clothing were bloody when he arrived there.

On the days immediately following this beating, Henry was at least partially disabled. His head ached severely and he resorted to rather constant use of headache powders and tablets.

After staying away from work for several days, during which he made some effort to obtain medical assistance, Henry reported for duty at a coal yard where he had seasonal employment. He may have worked one full day but on two others (probably Thursday and Friday) he was sent home by his employer because of his apparent physical inability to perform his customary tasks. He was unable to get up on Saturday following the difficulty and remained in bed until Monday, October 15th, when he was transferred by ambulance to a Columbia hospital. He died there Oc-

tober 22, 1951, after having been operated on in an effort to relieve pressure on his brain caused by a blood clot.

The surgeon who operated on Henry was not available as a witness. The medical testimony as to the cause of death was furnished by Dr. C. K. Lindler, County Physician, who made a post mortem examination. No autopsy was performed. However, the surgical incisions made it possible for Dr. Lindler to view the interior of the skull.

This witness testified that death was caused by pressure resulting from a "huge, subdural hemorrhage on the right side next to the brain."

As to what caused the hemorrhage, the witness testified on direct examination:

"Q. Well, what caused the hemorrhage? A. Well, many things will cause it, but the most common thing is some sort of injury—trauma of some kind.

"Q. From your examination of him, would you say that condition was caused by an injury or some other cause? A. As best I could determine from the history and everything, I would say an injury caused it."

He further explained that after an injury to the tissues or vessels in this area the healing processes of nature may take care of it without mishap; or, instead, the vessel "will just rupture out, and then you will have your hemorrhage." The time interval and the degree of discomfort and disability between the injury and the actual "rent of the vessel and the blood pouring out" vary. "You can't say that this fellow will have it in three days and another in five and another in ten. You can ('t ?) prophesy on that."

After having testified on cross-examination that hemorrhage may be "spontaneous * * * in different diseases, such as meningitis, syphilis and hardening of the arteries", the witness on re-direct examination testified as follows:

"A. Well, the history goes right back to the injury, and common-sense would tell you that was the most reasonable cause of the man's condition.

"Q. Then, in your opinion, that injury caused his death? A. Yes, sir."

Here the sequence of events raises a natural inference that the injuries inflicted on Henry by appellant caused or contributed to his death.

This inference is strengthened by the medical explanation of the relation between such an injury and a cerebral hemorrhage; and is supported by the expert opinion of Dr. Lindler, based on the case history and his post mortem examination, that the hemorrhage which caused Henry's death was a consequence of the previously inflicted injuries.

The evidence required submission of this issue to the jury.

The exceptions are overruled and the judgment affirmed.

BAKER, C. J., and STUKES, TAYLOR and OXNER, JJ., concur.